## Case No. 18,221.

### The ZOUAVE.

[Brown, Adm. 110.] [1]

District Court, E. D. Michigan. March, 1864.

COLLISION—DUTIES OF TUGS AND TOWS.

1. The contract of towage implies knowledge of the channel and safe pilotage.

2. Good seamanship requires that vessels of heavy draft should be placed behind those of lighter draft.

[Followed in The Sweepstakes, Case No. 13,-687. Cited in Orhanovich v. The America, 4 Fed. 340.]

3. An improper order given in a moment of imminent peril is no fault.

[Cited in The Coleman, Case No. 2,981.]

Libel by John Kilderhouse, owner of the schooner Arnold, against the tug Zouave and the schooner Rich.

Alfred Russell, for libellant.

J. S. Newberry and W. A. Moore, for the Zouave.

A. W. Buel, for the Rich.

WILKINS, District Judge. This was a collision on the St. Clair Flats, caused by the grounding of libellant's vessel by the tug Zouave, in consequence of which the Rich, which was second in tow, ran into her, occasioning considerable damage.

At the close of the evidence, I entertained no doubt as to the Rich, but deemed it best, as well as courteous to the counsel, to reserve an opinion until the entire case should be heard. The Zouave had taken the Rich first in tow at the head of the river, when, subsequently, the Arnold, of greater draught, appeared, and by direction of the master of the tug, the position of the Rich was changed, and the Arnold was placed first and the Rich second. It is clear, that had the Rich been kept in her original position, there would have been no collision—she would not have been forced into the Arnold, and, therefore, the stranding of the latter, however it might have affected the other vessels in line, would not have occasioned the collision by the Rich. Having contracted for safe towage, the Rich was under the control and government of the tug, and her duty was simply to follow her lead, obey her direction, and faithfully submit to her guidance.

The contract of towage comprehends safe pilotage, especially through the perilous passage of the St. Clair Flats, where the channel is narrow and requires the greatest precaution. The contract embraces more than mere progress against adverse wind, or the supply of speed, when there is no wind. The

1 [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

tug is presumed in the undertaking she makes, to know the channel and all its perils, and engages to take her tow line safely through. It comprehends knowledge, caution, skill and attention. The proofs show that the Rich was of less draught than the Arnold, and had her position in line remained unchanged, she would not have stranded, whether or not the Zouave was in the channel. Placing her in the rear of the Arnold, was the act of the Zouave, with the presumed knowledge of the risk to be incurred, and not the act of the Rich.

But the court holds further: That there was no fault in the Rich as to the order given, even if, under the excitement of the moment, that order was improper. The peril was sudden and imminent. She was in great danger both in front and rear, with little, scarcely a moment's, time for consideration; and, as was strenuously urged and admitted in the case of The White Cloud, an improper order given under such circumstances, is not to be considered a fault. She had a full complement of men, and every man was at his post. The tow line was going at the rate of five miles an hour. The danger was immediately perceived by the lookout of the Rich, immediately reported, and the order as immediately given. Neither is it so very clear that this order was not the best under all the existing circumstances. The Penfield was coming upon her, within 110 feet, and affording but a few seconds to her captain to determine how his vessel should escape from the danger in which she was placed by the stranding of the Arnold.

The expert testimony differs as to the proper order under such circumstances, yet the testimony of the officers and crew, also experts, under whose personal observation the facts occurred, is much more satisfactory and reliable on this question than that of others, however learned in the theory and practice of navigation, who were not present at the time, and could not see all the incidents as they actually occurred at the crisis. Hypothetical proof, though drawn from experience, is not as satisfactory in cases of this kind as the observation of experience on the spot and at the time. But, be the order given strictly right or wrong, it was necessarily given on the instant, under great peril, and for self-safety, and, therefore, was no fault. It would be gross injustice to punish the Rich in damages, when the propelling power of the Zouave, the force of the current, and the stranding of the Arnold, placed her, unwillingly, in the great peril to which she was so suddenly exposed, and under which an order, at least of only doubtful propriety, was given. At best, it was scarcely possible for her, under the speed and space that has been established by the proofs, to escape being run into by the Penfield, running ashore, or colliding with the Arnold. Self-safety was with her the paramount law.

The case of The Morton [Case No. 9,864], has been cited. Though somewhat similar, it is not exactly this case. There was proof that the collision could have been avoided in that case by the proper management of the stranded vessel, and the court then held, and now holds, that vessels in tow have duties to perform, the neglect of which, if causing a collision, would release the tug. They must exercise the proper care for self-preservation, obey the directions of the pilot, in emergency give proper orders, and are certainly not discharged by their contract from all duty. The Rich, as the proofs demonstrate in this case, was vigilant, prompt, careful, and obedient, and the mere probability of her escaping a collision by a different order than that given, does not place her in fault. There must be a reasonable certainty to convict. Releasing the Rich from the allegations of the libel, the Zouave must be held responsible, unless the collision was an inevitable accident, for I do not deem the Arnold in fault. Her crew was competent, she obeyed the orders of the pilot, followed her lead, practiced no deception as to her draught, and, when taken in tow, was open to the inspection of the master of the Zouave, who, knowing the channel and its depth, made his contract accordingly. Unavoidable accident is an event unexpected by human experience, not the act of man or man's agency, as a sudden storm of wind, or a stroke of lightning. Unforeseen peril, that which cannot be calculated by human science or experience, can only make a collision on lake or river an unavoidable accident. Such, certainly, was not the case here.

It is established by the proofs that the Arnold was the vessel of the greatest draught in the whole line, and therefore more apt, in shallow water, to run aground. Placing her first imperiled the rest as well as herself. She ought to have been placed last. This good seamanship required. The master of the Zouave so testifies, but he omitted this very obvious duty so essential in order to secure the Arnold's safety. The collision occurred from her running aground, and had she been last instead of first, it certainly would not have occurred. This arrangement of the tow line was a primary fault in the tug, and independent of the other circumstances in the case, renders her liable.

In the contract of towage, the tug master is bound to arrange his vessels in tow, with the view of securing the safety of all with whom he contracts, and no reckless and unsanctioned usage on the part of tug masters will be allowed to modify such a salutary rule for the protection of life and property. Furthermore, the court is satisfied from the proofs, that the Zouave was not in the proper channel when the Arnold stranded. She was too far to the eastward. The Naomi and the Two Fannies, of equal, if not greater draught, passed the Arnold to the westward, while she lay aground. She was pulled off to the westward when extricated, found water sufficient, and her mate states substantially that he ported his wheel shortly before the stranding, unquestionably with the view to keep in the channel, as she evidently was not then in the middle of the channel, but kept so close to its eastern border, if not outside, as to lose the depth of water necessary for the Arnold. This was not the skillful navigation for which she contracted. And, if before the collision, she was in the channel, there was no sufficient excuse for varying her course from the obscuration of the ranges. The wind was down the river, and if the ranges were obscured at all it was but for a short time that the obscuration existed. The master and the mate of the Rich state that the ranges were obscured but a few moments, and the tow carried no canvas. An unusual obscuration might excuse and make the collision unavoidable, but such a difficulty should always be anticipated and provided against by skillful tug masters, who should then slacken speed and proceed with greater caution. Decree for libellant.

The case of The Morton [Case No. 9,864], cited in this opinion, was reversed on appeal.